Eastern District of Kentucky
FILED
FEB 28 2006
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-258-GWU

NOLAN GRIFFIN,                                          PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Griffin

       Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Griffin

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Nolan Griffin, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease, degenerative joint disease, and depression. (Tr. 23). Nevertheless, the ALJ determined that Mr. Griffin retained the residual functional capacity to perform medium level exertion, with no more than "frequent" kneeling and crawling and "occasional" climbing of ramps, stairs, ladders, ropes, and scaffolds. (Tr. 25). The ALJ proceeded to apply Rule 203.11 of the Commissioner's Medical-Vocational Guidelines (the "grids"), which directs a conclusion of "not disabled." (Tr. 27). The Appeals Council declined to review, and this action followed.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mr. Griffin alleged disability due to back and knee pain, poor nerves, and an eye problem. (Tr. 68). At the administrative hearing before the ALJ, he testified that he had stopped working because of pain in his lower back, which radiated down both legs. (Tr. 206). He also had knee pain, which prevented him from standing more

7

than 30 minutes. (Tr. 207, 218). He felt that he could sit for maximum of 20-25 minutes. (Tr. 219). He had also sought treatment at a Comprehensive Care Center (CCC) for a nerve problems and poor sleep, and had been told that his back was causing a lot of his problems, but had also been given medication. (Tr. 207-8). He did not have money to have his back and other problems investigated, and could not afford medication. (Tr. 214-15).

Although the plaintiff testified that he recently began treatment at a free medical clinic (Tr. 212), the only treatment records submitted for his back problem are from a hospital emergency room, which reflect complaints of back pain, but had a few decipherable objective findings. (E.g., Tr. 139, 151-2, 160, 168). A lumbar spine x-ray was obtained in September, 2003 showing disc space narrowing at L5-S1 and anterior spurs at L3-4. (Tr. 136). The alignment of the spine was normal, and there was no evidence of wedge compression. (Id.).

Dr. Peter Gurk conducted a consultative examination of Mr. Griffin on May 14, 2003 and detected "emphysematous" lungs, crepitus of both knees without effusion, back tenderness without spasms, and a reduced range of motion of the hips and lumbar spine. (Tr. 96-8). He diagnosed chronic musculoskeletal low back pain, degenerative joint disease of the knees, and emphysema. (Tr. 98). Subsequently, he obtained an x-ray of the right knee showing "mildly" diminished joint space consistent with degenerative joint disease and a small degree of spurring in the medial aspect of the knee, and a normal pulmonary function test indicating no

8

Griffin

restrictive or obstructive pulmonary disease. (Tr. 102-4). No functional restrictions are given.

Counsel for the plaintiff argues that it was error for the ALJ to rely on the functional restrictions of examiners who had apparently seen only the first part of Dr. Gurk's examination and not his subsequent objective testing, including the lumbar spine x-ray. As far as can be determined from the evidence in the Court's transcript, the first physical residual functional capacity assessment was dated July 10, 2003, one day after the state agency received Dr. Gurk's second report. (Tr. 102,107-14). However, this assessment does not appear to been signed by a physician or medical specialist, but rather merely a fairly low level state agency employee. See Tr. 34. The other residual functional capacity assessment itself is undated and unsigned (Tr. 115-22). Thus, the record is one in which no physical restrictions were clearly linked to any medical source and it could be said that <u>any</u> physical restrictions noted by the ALJ were gratuitous.[1]

The plaintiff's other argument on appeal focuses on records from the CCC, where Mr. Griffin was examined by the staff psychiatrist, Dr. John Schremly, on April 30, 2004. (Tr. 179). He described an inability to sleep and feeling of nervousness for the past three years. (Id.). His back pain also made it difficult to sleep. Dr. Schremly described Mr. Griffin as appearing slightly depressed and moving slightly

---

[1] Given this fact, it is unnecessary to address the argument regarding the physical restrictions and Social Security Ruling 83-14.

9

more slowly than average because of decreased energy level, but found him "affable." (Id.). He diagnosed "mild" major depression, with a Global Assessment of Functioning (GAF) score of 55, and prescribed a trial of the medications Seroquel and Paxil. (Tr. 180). On Axis IV of his diagnosis, Dr. Schremly wrote "Unable to work[; c]hronic pain with back disease[; d]ependent on grown son[; u]ndersocialized[; u]ndereducated." (Id.).[2] On follow-up with a CCC counselor approximately two weeks later, Mr. Griffin related that the medications were helping him sleep, but he also described feelings of boredom, with nothing to do now that he was not working. The possibility of going fishing was discussed. (Tr. 177). On the plaintiff's last recorded visit to Dr. Schremly, on May 27, 2004, he again reported that he was generally sleeping better and felt less depressed, but still had pain. (Tr. 176). Dr. Schremly described a mild to moderate overall improvement, and specifically noted that the plaintiff was less tense and depressed. (Id.).

Counsel for the plaintiff points on appeal that a GAF score of 55 reflects "moderate symptoms...OR moderate difficulty in social, occupational, or school functioning." Diagnostic And Statistical Manual of Mental Disorders (Fourth Edition-

---

[2]Axis IV of the "multiaxial assessment system" is intended for "reporting psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders," such as "a negative life event, an environmental difficulty...,a familial or other interpersonal stress...,or other problems relating to the context in which a person's difficulties have developed." Diagnostic And Statistical Manual of Mental Disorders , p. 31. It is not part of the diagnosis, which is given on Axes I and II. Id.

10

Text Revision) (DSM-IV-Tr.), p. 34. She notes that the comments under Axis IV support the view that the plaintiff was undersocialized, undereducated, and unable to work, and, at the very least, demonstrate the presence of vocationally relevant mental impairments, which made the use of a vocational expert (VE) necessary. While the ALJ did, inconsistently, find that depression was a "severe" impairment without identifying any specific functional restrictions as a result, under the circumstances of this case, any error was harmless. Dr. Schremly never identified any specific functional limitations, and, assuming that the GAF of 55 did reflect moderate impairments at the time that it was given, within a few weeks, the plaintiff was reporting improvement to not only Dr. Schremly but to another counselor at CCC. Therefore, it is less than clear that the restrictions would have lasted for 12 continuous months.

The decision will be affirmed.

This the 28 day of February, 2006.

G. WIX UNTHANK,
Senior Judge